IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHARON BALTZ                                    PLAINTIFF/COUNTER-DEFENDANT

V.                      CASE NO. 5:19-CV-5193

LIDESTRI FOODS, INC.                            DEFENDANT/COUNTERCLAIMANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are a Motion for Partial Summary Judgment (Doc. 30), Brief in Support (Doc. 32), and Statement of Facts (Doc. 31) filed by Plaintiff/Counter-Defendant Sharon Baltz. Defendant/Counterclaimant LiDestri Foods, Inc. ("LiDestri") has submitted a Response in Opposition (Doc. 42) and Response to Statement of Facts (Doc. 43). The Court has also received a Reply (Doc. 44) by Ms. Baltz. The Motion for Partial Summary Judgment is now ripe for decision and, for the reasons stated herein, is **DENIED**.

## I. BACKGROUND

On May 30, 2016, Ms. Baltz signed an Employee Confidentiality Agreement (the "Confidentiality Agreement") with her employer, LiDestri. On June 6, 2016, she signed a Confidentiality and Non-Use Agreement (the "Non-Use Agreement"). Ms. Baltz agrees that she had access to confidential information proprietary to LiDestri during her employment. She was also issued a company laptop, which gave her access to company documents, company systems, and her work email account.

Both the Confidentiality Agreement and the Non-Use Agreement that Ms. Baltz signed contained provisions requiring her to return all documents containing confidential information to LiDestri upon her termination. *See* Doc. 24-1 ("Upon separation from

1

employment, or at any time upon request by [LiDestri], you shall promptly return to [LiDestri] all Confidential Information in your possession or control."); *see also* Doc. 24-2 ("Upon termination of employment you continue to be under obligation not to disclose any confidential information that you have regarding LiDestri Foods and/or LiDestri Spirits or any customers of the Company, and you must relinquish access to any sources of confidential information."). She was terminated on Friday, October 26, 2018.

Ms. Baltz filed an employment discrimination suit against LiDestri on October 15, 2019. During discovery, Ms. Baltz produced 676 pages of documents to LiDestri. LiDestri contends that "many, if not all," of the documents produced by Ms. Baltz are confidential, subject to her "contractual and fiduciary obligations to LiDestri." (Doc. 43, ¶ 11). Ms. Baltz does not dispute that she kept these documents after she was terminated but asserts that the only other party she has shared these documents with is her attorney. In addition, Ms. Baltz did not return her company laptop until months after her termination when she was requested to do so by LiDestri's attorneys. LiDestri alleges, and Ms. Baltz does not seem to contest, that Ms. Baltz was told to return the laptop via UPS or FedEx at the time she was terminated, and she agreed to do so.[1] LiDestri further alleges, and Ms. Baltz does not dispute, that Ms. Baltz backed up the information on the laptop to a thumb drive, which she also returned to LiDestri months after her termination.

On May 18, 2020, LiDestri filed a four-count Counterclaim (Doc. 24) against Ms. Baltz alleging breach of the Confidentiality Agreement, breach of the Non-Use

---

[1] LiDestri claims this conversation is reflected in a recording produced by Ms. Baltz during discovery. However, the record also reflects that Ms. Baltz's attorney sent an email to LiDestri's general counsel on March 9, 2019, asking for instructions on how to return the laptop. It appears LiDestri's general counsel never responded to that email.

2

Agreement, conversion, and breach of the duty of loyalty. In response, Ms. Baltz filed this Motion for Partial Summary Judgment on December 28, 2020.

The "gist" of Ms. Baltz's Motion is that LiDestri's Counterclaim must fail because LiDestri cannot prove damages to support any of its counterclaims. LiDestri agrees it cannot show actual damages for breach of contract or intentional tort, but instead relies on the *Arkansas Law of Damages* treatise to argue that it is nonetheless entitled nominal damages. *See* Doc. 42, p. 4–5 (citing Howard W. Brill & Christian H. Brill, 1 Ark. Law of Damages § 3:1). LiDestri further asserts that it is entitled to injunctive relief because Ms. Baltz still "possesses many confidential LiDestri documents and is intending to use them to her advantage in discovery, without any regard for their confidential nature." (Doc. 42, p. 5).

## II. CHOICE OF LAW

Neither the parties nor the contracts at issue specify whether Arkansas or New York law applies. Thus, the Court must conduct a choice of law analysis as to LiDestri's breach of contract counterclaims, as well as the tort counterclaims of conversion and breach of the duty of loyalty.

### a. Legal Standard

A federal court sitting in diversity applies the choice-of-law principles of the state in which it sits. *See Platte Valley Bank v. Tetra Fin. Grp., LLC*, 682 F.3d 1078, 1082 (8th Cir. 2012); *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). In contract cases, Arkansas courts apply "the law of the state with the most significant relationship to the issue at hand." *Crisler v. Unum Ins. Co. of Am.*, 233 S.W.3d 658, 660 (2006). Where, as here, the subject contract does not include a choice-of-law provision,

the following factors are relevant in determining which state has the most significant relationship: "1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; [and] 5) the domicile, residence, nationality, place of incorporation and place of business of parties." *Id.* (citing Restatement (Second) Conflict of Laws § 188 (1971)). In tort cases, Arkansas courts look to the doctrine of *lex loci delicti* as well as to Professor Leflar's five choice-influencing considerations. *See Gomez v. ITT Educ. Servs., Inc.*, 71 S.W.3d 542, 546 (2002) (describing the Leflar factors as "softening" the "rigid formulaic application" of the *lex loci delicti* doctrine). "These five factors are as follows: 1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum's governmental interests; and 5) application of the better rule of law." *Id.*

### b. Discussion

The Court will first analyze LiDestri's counterclaim for breach of contract under the *Crisler* test, and will then analyze the tort counterclaims of conversion and breach of the duty of loyalty under the *Gomez* test. For the reasons explained below, the Court concludes Arkansas law controls on all counterclaims.

#### 1. Breach of Contract

Regarding the breach-of-contract counterclaims, the facts do not indicate where the contracts at issue were signed or negotiated. Thus, the first and second factors of the *Crisler* test are neutral to the Court's analysis. Similarly, the fifth factor does not favor one state or the other because while Ms. Baltz is a resident of Arkansas, LiDestri is incorporated and headquartered in New York. However, the remaining factors are

instructive. The third factor—the place of performance—weighs in favor of Arkansas because the contracts at issue required Ms. Baltz to keep certain information confidential during her employment with LiDestri. Ms. Baltz was hired to service the Walmart and Sam's Club accounts in Arkansas where those companies are headquartered. Although her job duties expanded beyond Arkansas, she remained based out of Arkansas, and Walmart and Sam's Club continued to be her main accounts. Likewise, the fourth factor—the subject matter of the contracts at issue—favors Arkansas for the same reason. Therefore, because the third and fourth factors favor Arkansas and the remaining factors are neutral, Arkansas law controls with respect to the breach-of-contract counterclaims.

### 2. Conversion

Regarding the counterclaim for tort of conversion, the first *Gomez* factor—the predictability of results—involves consideration of "the . . . ideal that the decision in litigation on a given set of facts should be the same regardless of where the litigation occurs, so that forum-shopping will benefit neither party." *Gomez,* 71 S.W.3d at 547. Litigation on the issue of conversion will likely be the same whether in Arkansas or New York because both states apply the same standard. *See Schmidt v. Stearman*, 253 S.W.3d 35, 41 (Ark. Ct. App. 2007) ("[C]onversion is committed when a party wrongfully commits a distinct act of dominion over the property of another that is inconsistent with the owner's rights."); *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) ("Two key elements of conversion are (1) plaintiff's possessory right or interest in the property[;] . . . and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."). As a result, forum-shopping does

Case 5:19-cv-05193-TLB Document 51 Filed 03/02/21 Page 6 of 11 PageID #: 488

not seem to be an issue here. Thus, the first factor does not seem to favor one state or the other.

The second factor—maintenance of interstate and international order—warrants "[d]eference to sister state law in situations in which the sister state's substantial concern with a problem gives it a real interest in having its law applied, even though the forum state also has an identifiable interest . . ." *Gomez*, 71 S.W.3d at 547. However, the opposite is true here. The forum state, Arkansas, has more of a substantial concern because the plaintiff resided and worked here. The only interest New York has in this case is the fact that LiDestri is a resident there. This interest does not override the substantial concern Arkansas has in this case. Given this fact and the fact that "residents of [Arkansas] are not likely to venture to [New York] to engage in tortious conduct," and vice-versa, the second factor weighs in favor of Arkansas law. *Id.*

The third factor—simplification of the judicial task—is not usually a "paramount consideration." *Id.* However, under this factor, where the out-of-state rule is outcome-determinative and easy to apply, "there is no good reason why the possibility of importing it as part of the out-of-state law governing the case should not be seriously considered." *Id.* New York law mirrors Arkansas law on the issue of conversion, so although it may be easier to apply, it is not outcome determinative. The third factor therefore favors the forum state, Arkansas.

The fourth factor—advancement of the forum's governmental interests—also favors Arkansas, as the only interest New York has in this issue is LiDestri's residency. Ms. Baltz, the alleged wrongdoer, is a resident of Arkansas, and the conduct relevant to

LiDestri's counterclaim occurred in Arkansas. Accordingly, Arkansas's interests would be advanced by applying Arkansas law on this counterclaim.

Finally, the fifth factor—application of the better rule of law—is neutral. Both states apply the same standard to conversion claims, thus, no state has a better rule of law. Therefore, considering the first and fifth *Gomez* factors are neutral, and all remaining factors favor the application of Arkansas law, Arkansas law controls with respect to the conversion counterclaim.

### 3. Breach of the Duty of Loyalty

The *Gomez* analysis conducted for conversion is also applicable to the breach of the duty of loyalty. Like conversion, the breach-of-the-duty-of-loyalty laws in Arkansas and New York are similar. *See Arkansas Dev. Fin. Auth. v. Wiley*, 611 S.W.3d 493, 498 (Ark. 2020) ("A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship."); *see also Litvinoff v. Wright*, 54 N.Y.S.3d 22, 24 (N.Y. App. Div. 2017) ("The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."). Both states also recognize this breach in the context of employee-employer relationships. *See Illumination Station, Inc. v. Cook*, 2007 WL 1624458, at *4 (W.D. Ark. June 4, 2007) ("Under Arkansas law an employee owes the employer a duty of loyalty during the term of the employment."); *Wallack Freight Lines, Inc. v. Next Day Express, Inc.*, 711 N.Y.S.2d 891 (N.Y. App. Div. 2000) ("It is well settled that an employee owes a duty of good faith and loyalty to an employer in the performance of the employee's duties."). Moreover, both tort counterclaims in this case are based on

the same factual allegations. Therefore, as the Court's choice-of-law analysis for LiDestri's conversion counterclaim is also applicable to LiDestri's breach-of-the-duty-of-loyalty counterclaim, Arkansas law also governs this counterclaim.

### III. SUMMARY JUDGMENT

#### a. Legal Standard

The standard for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l. Bank of Com. of El Dorado v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the

nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248). To meet its burden, "[t]he nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### b. Discussion

Ms. Baltz does not contest for purposes of this Motion that she retained a laptop and confidential business documents after she was fired from LiDestri. Nevertheless, she argues that summary judgment is appropriate because LiDestri cannot prove damages to support its tort and contract counterclaims. Since actual damages are not required for any of the counterclaims, however, summary judgment on this basis must be denied.

Damages are not an essential element of conversion in Arkansas. *See Integrated Direct Mktg., LLC v. May*, 495 S.W.3d 73, 75 (Ark. 2016) ("[T]o establish liability for the tort of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of, or is inconsistent with, the owner's rights."). Accordingly, as it relates to LiDestri's counterclaim for conversion, Ms. Baltz's contention that LiDestri failed to establish damages is not dispositive because damages are not a material element of conversion.

The remaining counts of the Counterclaim require proof of damages, but nominal damages are sufficient. *See* Howard W. Brill & Christian H. Brill, 1 Ark. Law Of Damages § 3:1 (Nov. 2020 Update) ("Nominal damages are appropriate if a party establishes that

a right has been infringed but no actual damages were suffered, or if actual damages were suffered but the evidence offered does not sufficiently establish the amount of damages."). Examples in case law also support this theory. *See, e.g., Baker v. Armstrong*, 611 S.W.2d 743, 745 (Ark. 1981) ("Wherever a party establishes the infraction of a right, but the evidence fails to show the extent of the damages resulting therefrom, he is entitled to nominal damages, whether the act complained of is an actual injury or not.").

If Ms. Baltz did indeed fail to return her laptop and confidential documents to LiDestri after she was terminated, as the Court must assume for purposes of summary judgment, then this act infringed LiDestri's rights under the Confidentiality and Non-Use Agreements. As a result, absent proof of actual damages, nominal damages is an appropriate remedy.[2] Thus, the Court concludes that LiDestri's lack of actual damages is not a basis to grant summary judgment for Ms. Baltz.

In the alternative, Ms. Baltz argues that if summary judgment is denied, the Court should enter a separate order under Rule 56(g) finding that LiDestri's failure to prove actual damages limits the forms of relief to which it is entitled. LiDestri has requested compensatory damages, punitive damages, injunctive relief, and nominal damages in its Counterclaim. Without evidence of actual damages, however, LiDestri is not entitled to compensatory damages. It appears likely that, as a matter of law, LiDestri's relief on the Counterclaim will be limited to nominal damages and injunctive relief; however, the Court

---

[2] In fact, both parties seem to agree that in the event Ms. Baltz prevails on LiDestri's counterclaim, any damages alleged by LiDestri should be limited to nominal damages. *See* Doc. 42, p. 4–5; *see also* Doc. 44, ¶ 2.

is reluctant to make a finding that punitive damages are also unavailable, as neither party briefed the issue.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Ms. Baltz's Motion for Partial Summary Judgment (Doc. 30) is **DENIED**.

**IT IS SO ORDERED** on this 2nd day of March, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE